# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **Joe R.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 17 C 6169** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff applied for Disability Insurance Benefits ("DIB") and Disabled Widower's Benefits

under Title II of the Social Security Act ("Act"), 42 U.S.C. §§416(i), 423, over five years ago.

(Administrative Record (R.) 190-94).[1] He claimed that he became disabled as of January 1, 2008 (R.

190), due to hereditary left leg syndrome and blood clots in leg and lungs.  (R. 213).  Over the next

few years, plaintiff's application was denied at every level of administrative review: initial,

reconsideration, administrative law judge (ALJ), and appeals council.  It is the ALJ's decision that

is before the court for review.  See 20 C.F.R. §§404.955; 404.981.

Plaintiff filed suit under 42 U.S.C. § 405(g), and the parties consented to the jurisdiction of

a Magistrate Judge on October 13, 2017. [Dkt. # 8].  The case was reassigned initially to another

Magistrate Judge. It was only recently reassigned to me on January 10, 2019. [Dkt. #30].  Plaintiff

asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, in the caption, only the plaintiff's first name shall be listed. Thereafter, we shall refer to Joe R. as the plaintiff.

an order affirming the decision.

**I.**

Plaintiff was 54 years old at the time of the ALJ's decision. (R. 32, 190). He worked steadily from 1983 through 2003 (R.219), most recently as a maintenance man for a church. (R. 219). That job involved lifting and carrying no more than 10 pounds, and an hour each of walking, standing, sitting, climbing, stooping and crawling. (R. 220). His previous job, as a city sanitation worker, was more strenuous, requiring him to lift up to 20 pounds and stand and walk all day. (R. 221). Earlier in his tenure in that position, he had to lift over 50 pounds with a co-worker. (R. 222). Plaintiff last worked in 2007 when the church maintenance job was phased out. (R. 57).

The medical record in this case is a little over 200 pages – relatively small, as these case go. (R. 268-479). Very little of it is pertinent. Indeed, Plaintiff's brief cites just 10 pages of it. [Dkt. #18, at 3, 5]. Moreover, the evidence he is pointing to only dates back to October of 2012, and the more significant findings are from the July 2013 and later periods. [Dkt. #18, at 2]. That makes things difficult for plaintiff to establish that he was disabled before the expiration of his insured status on December 31, 2012 (R. 27) – and of course the burden is his. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012).

After an administrative hearing – at which plaintiff, represented by counsel, and a vocational expert testified – the ALJ determined he was not disabled. The ALJ found that plaintiff's medically determinable impairments – "pulmonary embolism in 2012 and left hip osteoarthritis obliterated in 2013" – were not severe prior to the expiration of plaintiff's insured status. (R. 28).

In the ALJ's summarization of the medical evidence, she reviewed the records of plaintiff's trips to the clinic in 2009 and 2010. Significantly, the plaintiff denied any health issues at those visits

and, aside from a "waddling gait" from an old leg injury, examinations were normal. It was not until

October of 2012 that plaintiff began to experience pain in the right side of his chest. This was due

to a pulmonary embolism, which was treated. By the next visit in November 2012, the findings were

normal. They remained normal through the next summer, and Coumadin was discontinued. In July

2013, however, an x-ray of plaintiff's left hip showed advanced osteoarthritis in left hip. He was

limping and had a decreased range of motion. (R. 29-30).

The ALJ correctly noted that there was very little medical evidence prior to the expiration

of plaintiff's insured status. She acknowledged that plaintiff had no health insurance but, even so,

when he went to the free clinic he had no complaints, had normal exams and sought no treatment.

His pulmonary embolism, which occurred while he was insured, resolved in fewer than 12 months.

(R. 30). The ALJ noted that plaintiff testified that he did not stop working due to any impairment,

but because his job was phased out. He said he did not seek employment after that because he was

taking care of his daughter. (R. 29, 30). He cooked, did household chores, and drove. (R. 29, 30).

In the end, the ALJ concluded that plaintiff's allegations that his symptoms were disabling prior to

December 31, 2012, were "not entirely consistent with the medical evidence and other evidence in

the record . . . ." (R. 30). That conclusion was then explained by the ALJ.

The ALJ considered the reports of the state agency physicians who reviewed the record and

found the evidence did not establish a severe impairment prior to the date last insured. She found

these opinions to be supported by the record. (R. 31). But, the ALJ found the opinion of Dr. Barry

that plaintiff should be found disabled so, as Dr. Barry said, he could obtain health insurance and a

hip replacement. That request – for that is what it was – was entitled to no weight. There was

nothing in the Opinion dealing with plaintiff's condition prior to the expiration of his insured status,

3

and need for health insurance was not the dispositive factor for a finding of disability. (R. 31). In the end, the ALJ concluded that plaintiff had failed to prove he was disabled before his insurance expired and was, therefore not entitled to benefits under the Act. (R. 31).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)*; Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997).

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and "logical bridge" between the evidence and the result in order to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue,* 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that

logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)("... we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion."). On the other hand, the Seventh circuit has also said that the logical bridge requirement is a "lax" one. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). For a further discussion of the logical bridge requirement, *see King v. Berryhill*, 2018 WL 6179092 (N.D.Ill. 2018).

## III.

As already explained, the ALJ determined that plaintiff was not disabled because he had not proven he had a severe impairment before the expiration of his insured status.[2] Impairments are not

---

[2] That is step two of the familiar five-step process, in which the ALJ asks:

> (1) is the claimant currently employed; (2) does the claimant have a severe impairment; (3) does the claimant have an impairment meets or equals one of the impairments listed by the Commissioner, as disabling; (4) can the claimant perform their past relevant work; and (5) can the claimant perform other work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000)*; Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995). "An
(continued...)

"severe" when they do not significantly limit the claimant's ability to perform basic work activities, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521; *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016). The Agency has specified further that a non-severe impairment is "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96–3p, 1996 WL 374181, at *1 (July 2, 1996); *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). When evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms. *Id*. at *2. The Seventh Circuit has characterized the Step 2 inquiry as a *de minimis* screening for groundless claims. *Meuser*, 838 F.3d at 910; *O'Connor–Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016).

This case was a difficult one for the ALJ, because the ALJ had to consider two competing lines of evidence, or, more accurately, one line of evidence and one line of no evidence. On the one hand, an x-ray of Plaintiff's left hip from July 16, 2013, revealed "advanced arthritic changes . . . with essentially total destruction of the joint space itself . . . ." (R. 390). Of course, that came seven months after Plaintiff's insured status expired. But, as the ALJ noted, Plaintiff's hip didn't deteriorate within those seven months. (R. 30). There was some level of impairment prior to that. But there's simply little or no evidence for the ALJ to have considered, and, importantly, it was Plaintiff's burden to come up with some. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir.

---

[2](...continued)
affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868. The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868; *Knight*, 55 F.3d at 313.

2008)("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, . . . ."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove the claim of disability."); 20 C.F.R. § 404.1512(c) ( "You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."); *Davenport v. Berryhill*, 721 F. App'x 524, 527 (7th Cir. 2018)(claimant bears the burden of establishing the existence of a severe impairment through medical records); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014)("It was [claimant]'s burden to present medical evidence supporting h[is] claim of disability."). That's what's on the other hand or, more accurately, what isn't.

The ALJ has to assess "the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms." SSR 96–3p, 1996 WL 374181, at *2. There's no objective medical evidence about Plaintiff's hip impairment from prior to July 2013; there is certainly none from before his insured status expired. Plaintiff's own brief makes that clear – it cites nothing from the medical record in support of the argument that his impairment was severe. [Dkt. #18, at 5-9].[3] So, it's not as though the ALJ missed anything or did anything wrong in this regard. As the Seventh Circuit put it in a case where there

---

[3] Significantly, Plaintiff does not challenge the ALJ's finding that *his* particular pulmonary embolism was not severe. Instead, his focus is exclusively on the osteoarthritis in his left hip. Accordingly, any arguments regarding the pulmonary embolism – which, indeed, resolved in fewer than 12 months – are waived. *Truelove v. Berryhill*, No. 18-2119, 2018 WL 6242284, at *4 (7th Cir. Nov. 28, 2018); *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). That includes Plaintiff's perfunctory attempt to raise the pulmonary embolism issue in his reply, brief. *Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016); *Carter v. Astrue*, 413 F. App'x 899, 906 (7th Cir. 2011). And that is too late. *See also Lomax v. Astrue*, 2010 WL 337654, at *14 (N.D. Ill. 2010)("However, as the Seventh Circuit has repeatedly admonished, reply briefs are for replying, not for raising new matters or arguments that could have been—and ought to have been—advanced in the opening brief.").

was a similar lack of evidence from the critical period, "[i]t's hard to imagine what else the ALJ could have done." *Eichstadt*, 534 F.3d st 668.

In this vein, Plaintiff argues that under SSR 85-28p, the ALJ had to assess whether he could perform his past medium work of lifting up to 50 pounds and standing and walking six hours a day. [Dkt. #18, at 7]. The ruling, which has never been applied in a federal court case, notably reminds us that, "[a]t the second step of sequential evaluation, . . . *medical evidence alone* is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." https://www.ssa.gov/OP_Home/rulings/di/01/SSR85-28-di-01.html. When discussing whether he can perform his past work, however, Plaintiff cites absolutely no medical evidence, relying instead on a snippet of testimony from his hearing. [Dkt. # 18, at 6-7]. As such, SSR 85-28p is no help to Plaintiff. Moreover, despite Plaintiff's description in his brief of his past work, his job as a church janitor, according to him, did not involve lifting up to 50 pounds or standing or walking six hours a day. (R. 56-57; 220). It was – again, according to Plaintiff, far less demanding than that.

Plaintiff also points to a March 7, 2014 letter from one of his doctors, Dr. Baker, who wrote a letter on Plaintiff's behalf stating that the Plaintiff had been receiving care at the health center for the past few years, that his left hip pain was "severe and intermittently progressive." He needed a hip replacement and medical insurance. The doctor didn't indicate when or whether the hip problem left Plaintiff disabled, but said that Plaintiff deserved "disability insurance or even Medical Insurance so that he can get the hip replacement . . . and help restore [his] quality of life." (R. 389). The ALJ rejected this opinion, giving it no weight. (R. 31). Plaintiff argues that this was improper. [Dkt. # 18, at 7-9].

Paraphrasing what the ALJ is thought to have stated about this letter in her Opinion, is not particularly helpful to plaintiff's case. (R. 31). An ALJ does not have to accept an opinion from a treating physician as long as the ALJ cites good reasons for rejecting it. *Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). As the Seventh Circuit has repeatedly said, "'[t]he patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.' " *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)(Posner, J.).    That caution applies here, and the ALJ had more than sufficient reasons to not give the weight to the doctor's letter [Dkt. #18 at 7-9] that plaintiff's counsel feels it should have been given. (R. 31).

The opinion comes well over a year after Plaintiff's insured status expired. The letter says nothing about plaintiff's symptoms or what those symptoms allowed or prevented the plaintiff from doing. It says nothing about when his impairment might have qualified as severe or disabling. *See Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011)("If a claimant is not disabled at the time he last has social security insurance coverage, he is not eligible for Disability Insurance Benefits even if he later becomes disabled.").

Moreover, as the ALJ pointed out, the doctor's conclusory letter in which he expressed the hope that the plaintiff could get disability insurance to aid him in obtaining a hip replacement and thereby help restore the quality of his life is little more than a plea to assist the plaintiff. It certainly is not supported by the medical evidence in the case or the records from the health center. It does not qualify as the kind of opinion that is often entitled to significant or controlling weight. *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016)(". . . a treating physician's medical opinion is entitled to controlling weight in the disability analysis if it is well supported by objective medical evidence and

9

is consistent with other substantial evidence in the record."); *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018); *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995).

Neither prerequisite is satisfied here. Significantly, plaintiff did go to the clinic both before and after the expiration of his insured status, but had no complaints about his left hip until March of 2014. (R. 391-92). Prior to that, he denied any health issues or pain on each visit. (R. 396, 398, 399, 401, 412, 414, 418). His only problem seems to have been when he experienced pain on his right side due to his pulmonary embolism. (R. 405-06). Thus, there was simply no medical evidence for the ALJ to assess, or that supported Mr. Redding's doctor's plea, which, again, wasn't really an opinion on disability; it was little more than an expression of his desire to help a patient – the very thing the Seventh Circuit has warned about. *See also Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016)*(". . .* the Social Security Administration defines medical opinions as 'statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity' of a claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, physical and mental restrictions, and residual functional capacity.'"); *McFadden v. Berryhill*, 721 F. App'x 501, 505 (7th Cir. 2018)(doctor's opinion properly rejected where it was " at odds with the absence of any evidence that McFadden had received treatment for arthritis . . . ."); 20 C.F.R. § 404.1527(a)(2).[4]

Then, there was Plaintiff's own testimony which the ALJ had to consider, and did. Plaintiff testified that he did not quit working because of any impairment, but because his job was phased out.

---

[4] Plaintiff also argues that the ALJ impermissibly rejected Dr. Baker's opinion because it was on a issue reserved for the Commissioner. [Dkt. # 18, at 8]. The ALJ said nothing of the kind. In fact, the ALJ clearly said that the opinion focused on whether Plaintiff could use health insurance, not whether he was disabled under the Act before the expiration of his insured status. (R. 31).

(R. 57, 63-64). He did not say that his impairment had anything to do with him not working after that: he testified that he didn't work because he had to take care of his daughter. (R. 77-78). The ALJ considered this testimony, as she was required to do, but clearly, it does not support Plaintiff's claim.

The plaintiff's brief characterizes part of the decision as "boilerplate" and thus requiring reversal. The Opinion's conclusion stated that the Plaintiff's allegations were "not entirely consistent with the medical evidence and other evidence . . . ." (R. 30); [Dkt. #18, at 9-10]. While ALJs have been rightly criticized for employing unedifying, conclusory language in their Opinions, courts have made it plain that so-called "boilerplate" is not fatal to a decision so long as the ALJ goes on to provide a supportable rationale for discrediting a claimant's allegations. *See, e.g., Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir.2012); *Shideler v. Astrue*, 688 F.3d 306, 311–12 (7th Cir.2012); *Dunn v. Berryhill*, 2019 WL 142279, at *6 (N.D. Ill. Jan. 9, 2019)("not entirely consistent" did not necessitate a remand); *Lopez v. Berryhill*, 340 F. Supp. 3d 696 (N.D. Ill. 2018)("not entirely consistent" language alone not enough to require remand).

While the ALJ in this case resorted to formulaic "boilerplate," that is not all that the Opinion did – as underscored by the fact that Plaintiff goes on to critique certain of the ALJ's express reasons underlying the conclusion.

As unpersuasive as it is to read Opinions with unedifying boilerplate, it is equally unpersuasive to read brief after brief that ignores the consistent holdings that the use of boilerplate is not fatal so long as the ALJ goes on to supply reasons for the conclusion. Unfortunately, all too many briefs content themselves with "noting the boilerplate" but failing to conduct any further inquiry or analysis.

In any event, the Plaintiff bears the burden of showing the court where the ALJ's reasoning was "patently wrong," *McHenry v. Berryhill*, 911 F.3d 866 (7th Cir. 2018); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008). The plaintiff has failed to do that here.

Plaintiff bases his entire case on his testimony at his April 2016 administrative hearing that between 2009 and 2012, he "could probably stand on [his] feet an hour straight", "could probably . . . only walk about ten minutes." (R. 70-71). Yet, as the ALJ pointed out, in visit after visit to the clinic, Plaintiff denied pain or health issues. (R. 398, 399, 401, 412, 414, 418). Wouldn't he have mentioned something, just once, in several visits over the years about not be able to stand or walk? Common sense and human experience – which have a role to play in all cases,[5] including Social Security cases, *Simila v. Astrue*, 573 F.3d 503, 518 (7th Cir. 2009)(plaintiff's position rejected as it "downplay[ed] . . . common sense."); *Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010) – dictates that he would have. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005)(plaintiff's credibility undermined where she never sought treatment for headaches despite alleging they were severe).

And that is what the ALJ thought as well. (R. 30). It was entirely proper for the ALJ to reject Plaintiff's testimony about what he probably could have done or not done four to seven years

---

[5] Common sense and human experience always have a role to play in the solution of legal problems. *Cf. United States v. Montoya De Hernandez,* 473 U.S. 531, 542 (1985); *United States v. Reichling,* 781 F.3d 883 (7th Cir. 2015); *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009); *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 743 (1st Cir. 1995); *Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir. 1992) (Breyer, C.J.); Posner, How Judges Think, 116 (Harvard University Press 2008). *Cf. Begay v. United States,* 2018 WL 557853, at *10 (D.N.M. 2018)("Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'").

earlier when it did not begin to match his medical records from that period. *Murphy v. Berryhill*, 727 F. App'x 202, 207 (7th Cir. 2018)(ALJ properly rejected plaintiff's claims where they were incongruous with "relatively modest symptoms [plaintiff] reported to her doctors").

Next, Plaintiff incorrectly argues that the ALJ drew an impermissible inference from the fact that he testified he was looking for work. The ALJ said that this fact suggested that plaintiff, himself, felt he could work at that time. After all, a person who believes he is incapable of work generally will tend not to look for work. While the behavior is not conclusive, it is certainly a fact that an ALJ can consider along with the other relevant facts of the case in determining disability. (R. 30). Unlike the case Plaintiff relies on, the ALJ never said that this was evidence of an ability to work, *see, e.g., Gerstner v. Berryhill*, 879 F.3d 257, 265 (7th Cir. 2018); *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016), but only that it was evidence that Plaintiff thought he was capable of working. After all, a person who is incapable of work will tend generally not to seek out that which he believes he cannot do. And, although a claimant can still be found disabled while collecting unemployment benefits or looking for work, *see Voigt v. Colvin*, 781 F.3d 871, 876–77 (7th Cir. 2015), an ALJ may take this factor into account in assessing the subjective complaints of disability. *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Dowlen v. Colvin*, 658 F. App'x 807, 812 (7th Cir. 2016). But, most importantly, it was but one of a list of reasons the ALJ gave for discounting the extent of Plaintiff's complaints. (R. 30-31).

Plaintiff also complains that the ALJ faulted him for not seeking treatment despite the fact that he had no health insurance. [Dkt. # 18, at 11-12]. An inability to afford treatment can be a valid reason for not seeking care; but that's not remotely the case here, and the plaintiff's contention that it is misreads and distorts the ALJ's Opinion, which refutes the reading accorded to it by the

plaintiff's brief:

> The claimant alleged he did not seek treatment due to a lack of insurance; however, the objective evidence demonstrates the claimant sought treatment from a low income/free clinic, suggesting the claimant was aware of these types of clinics in the area. . . . His lack of health insurance does not explain why the claimant continued to deny any limitations and fail to report any symptoms to the providers at the free clinic. (R. 30).

The reasons given by the ALJ were more than sufficient to allow rejection of the plaintiff's testimony that he could not stand for more than an hour or walk for more than ten minutes. *See, e.g., Schloesser v. Berryhill*, 870 F.3d 712, 721–22 (7th Cir. 2017)(". . . disregarding [claimant's] subjective testimony where it contradicts with contemporaneous reports he made to his physicians and their independent observations is permissible."). There was nothing preventing Plaintiff from going to the clinic – as he in fact did – and once there, nothing prevented him from reporting his problems to the doctors there – if, in fact, his claims to the ALJ were true. But he didn't – as common sense would dictate he would have had the conditions about which he now complains existed. The absence of complaints where it would have been natural to have made them is a substantial basis for rejecting or discounting Plaintiff's present claims. *Flores v. Colvin,* 2014 WL 5464344 (D. Minn. 2014); *Wiles v. Colvin*, 2013 WL 1947295, at *3 (W.D. Mo.2013); *Fields v. Astrue*, 2012 WL 6705863 (E.D.Mo. 2012); *Attia v. Astrue*, 2007 WL 2802006 (E.D.Cal. 2007). As Judge Posner has said in another context "the silence is deafening." *Muhammad v. Oliver*, 547 F.3d 874, 877 (7th Cir. 2008).

Silence like obliquity can be eloquent. *United States v. Curescu*, 674 F.3d 735, 740 (7th Cir. 2012). What is legally significant is silence in the face of circumstances where one would reasonably expect either a response to a statement or some statement, itself, by the party who remains silent.

*Georgia v. South Carolina,* 497 U.S. 376, 389 (1990). The test is the common sense one of whether

"it would have been natural for the person to have made an assertion where there was only silence

on the matter." 3A John Henry Wigmore, *Evidence in Trials at Common Law* § 1042 at 1058 (James

H. Chadbourn rev., 1970) (emphasis deleted).

In the instant case, the ALJ was correct in looking to the fact that the plaintiff knew about

and availed himself of access to free clinics, but did not attempt to utilize them to seek treatment –

or perhaps even more telling – to report now claimed symptoms to his providers at the free clinic.

In short, the reasons given by the ALJ were more than sufficient to allow rejection of the plaintiff's

contention that he could not stand for more than an hour or walk for more than 10 minutes.

In the end, this is a case about Plaintiff's failure to come forward with evidence to support

his claim that he was disabled before December 31, 2012. He did not present it at the administrative

level, and he does not direct the court to it even at this level. He has been represented by capable

counsel the whole time, so it must be assumed that he has made his best case for benefits. *Summers*

*v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017); *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007);

"It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to

prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004); 20 C.F.R.

§ 404.1512(c) ( "You must provide medical evidence showing that you have an impairment and how

severe it is during the time you say that you were disabled."); *Bowen v. Yuckert*, 482 U.S. 137, 146,

n. 5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide

information about his own medical condition, to do so."); *Eichstadt*, 534 F.3d at 668. The ALJ

concluded the requisite evidence was lacking. That judgment was appropriate. Reversal would not

be.

Given the tenor of Plaintiff's arguments, it would seem that a final word is worthwhile. The question we consider on review is not whether an alternative finding may also be supported by substantial evidence. Rather, we ask whether the final agency finding—here the ALJ's finding—is supported by substantial evidence. *Scheck*, 357 F.3d at 699. If it is, the ALJ's decision must be upheld even if an alternative position might also be supported by substantial evidence. *Id.*; *Schmidt v. Astrue,* 496 F.3d 833, 843-44 (7th Cir. 2007). Here, substantial evidence supports the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment [Dkt. #25] is granted and the ALJ's Opinion is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/29/19